1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LISA K.[1]** | )    **NO. CV 21-3325-KS** |
|            **Plaintiff,** | ) |
|    v. | )    **MEMORANDUM OPINION AND ORDER** |
| | ) |
| **KILOLO KIJAKAZI,[2] Acting** | ) |
| **Commissioner of Social Security,** | ) |
|            **Defendant.** | ) |
| | ) |

## INTRODUCTION

Lisa K. ("Plaintiff") filed a Complaint on April 18, 2021, seeking review of the denial of her applications for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). (Dkt. No. 1.) On May 23, 2022, the parties consented,

---

[1]    Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2]    Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Therefore, pursuant to Federal Rule of Civil Procedure Rule 25(d), Kilolo Kijakazi should be substituted for her predecessors as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 10, 23-24.)  On May 3, 2022, the parties filed a Joint Stipulation ("Joint Stip.") addressing two alleged errors by the Administrative Law Judge ("ALJ") in assessing Plaintiff's claim on remand.   (Dkt. No. 22.)   Plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits.  (Joint Stip. at 39.)  In the alternative, Plaintiff seeks a remand for a new hearing.  (*Id.*)  The Commissioner requests that the ALJ's decision be affirmed.  (*Id.* at 40.)  The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On September 29, 2015, Plaintiff filed a claim for a period of DIB and SSI alleging disability commencing September 1, 2013 (AR 179, 180, 258-59, 260-65) due to endometriosis; mixed mold toxicity causing dermatitis, headaches, hair loss, and shortness of breath; head, neck, and back pain; major depression; anxiety; attention deficit disorder; post-concussion syndrome due to traumatic brain injury; and insomnia (AR 287, 297).  Plaintiff, who was born on December 2, 1972, was 40 years of age on the date of alleged onset.[3]  (AR 935, 956.)  Her claim was denied on initial determination on March 1, 2016 (AR 183-89), and she requested a hearing before an ALJ on April 28, 2016 (AR 190-192).[4]  On February 8, 2018, Plaintiff appeared and testified at a hearing before ALJ Michael D. Radensky.  (AR 131-60.)  ALJ Radensky issued an unfavorable decision on April 3, 2018 denying Plaintiff's disability claim.  (AR 18-35.)

/ /

---

[3]     At the age of disability onset, Plaintiff was considered a "younger person" under Agency guidelines.  *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).

[4]     Plaintiff's case skipped the reconsideration level of appeal because it was designated a "prototype case."  (Joint Stip. at 1; AR 179, 180.)

On December 11, 2018, the Appeals Council denied Plaintiff's request for review of ALJ Radensky's decision.  (AR 3-9, 256-57.)  Plaintiff then commenced a civil action in this Court on February 7, 2019 (AR 990-91 (No. CV 19-951-KS)), which was remanded on December 23, 2019 pursuant to the parties' Stipulation for Voluntary Remand (*see* AR 996-98).

Following remand, a hearing before a different ALJ, ALJ Lisa Martin ("ALJ Martin" or "the ALJ"), was held by telephone on November 12, 2020.  (AR 944-84.)  Plaintiff, represented by counsel, appeared and testified, as did Vocational Expert Marcos Molinar (the "VE").  (AR 944-84.)  The ALJ issued an unfavorable decision dated January 26, 2021.  (AR 923-43.)  This timely appeal followed on April 18, 2021.

## SUMMARY OF ADMINISTRATIVE DECISION

Pursuant to the District Court's remand order, the Appeals Council directed the ALJ to do the following:

(1) Further consider the opinion of Suzanne Schultz, M.S.W. . . . pursuant to Social Security Ruling 16-3p.

(2) As necessary, consider [Plaintiff]'s maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p).  In so doing, evaluate the treating and nontreating source opinions pursuant to . . . 20 CFR 404.1527 and 416.927 and nonexamining source opinions in accordance with . . . 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence.

(3) Further evaluate [Plaintiff]'s alleged symptoms and provide rationale in accordance with []20 CFR 404.1529 and 416.929[].

(4) If warranted by the expanded record, obtain evidence from a [VE] to clarify the effect of the assessed limitations on [Plaintiff]'s occupational base (Social Security Rulings 83-12, 83-14, 85-15 and 96-9p). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The [ALJ] will ask the [VE] to identify examples of appropriate jobs

and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the [VE] evidence the [ALJ] will identify and resolve any conflicts between the occupational evidence provided by the [VE] and information in the [DOT] and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(AR 987-88.)  With these specific instructions, the ALJ then applied the five-step sequential evaluation process the Social Security Administration has established for determining whether an individual is disabled.  (*See* AR 926-28 (citing AR 985-89).)

After determining that Plaintiff last met the insured status requirements of the Social Security Act through December 31, 2018, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2013, the alleged onset date.  (AR 929.)  At step two, the ALJ determined that Plaintiff had the following severe medically determinable impairments: left-knee disorder with surgery; endometriosis, traumatic brain injury ("TBI") and post-concussion syndrome; migraine headaches; tinnitus; depression; anxiety; post-traumatic stress disorder ("PTSD"); and attention deficit hyperactivity disorder ("ADHD").  (AR 929.)  The ALJ also considered Plaintiff's medically determinable impairment of de Quervain's syndrome, but concluded that this impairment did not significantly limit Plaintiff's ability to perform basic work-related activities, and, therefore, was non-severe.  (AR 929.)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1.  (AR 929.)  The ALJ next concluded that Plaintiff had the residual functional capacity ("RFC") to perform a full range of light work, except as follows:

/ /

[Plaintiff] is precluded from all work involving climbing of ladders, ropes, and scaffolds, all exposure to dangerous work hazards (unprotected heights and exposed moving machinery), and all exposure to concentrated pulmonary irritants. [Plaintiff] is limited to moderate noise work environments. Additionally, [Plaintiff] is limited to detailed, but not complex, work tasks, work not requiring a fast assembly quota pace as defined at the hearing, work not involving more than occasional multitask work duties, and work allowing for some off task behavior up to 3% of the workday due to momentary symptom distractions.

(AR 930.)

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work as a medical secretary, and that transferability of job skills was not an issue in the case. (AR 935.)  However, after considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including: storage facility rental clerk; and router.  (AR 936.)  Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the onset date of September 1, 2013, through the date of the ALJ's decision.  (AR 936.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  *Ahearn v. Saul*, 988 F.3d 1111, 1115-16 (9th Cir. 2021); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "more than a mere scintilla," but less than a preponderance: it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted); *see also Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014).  "Even when the evidence is susceptible to more than one rational interpretation,

[courts] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded by regulation on other grounds*.

Although this Court cannot substitute its judgment for the Commissioner's, the Court nonetheless "must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion." *Ahearn*, 988 F.3d at 1115; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Ahearn*, 988 F.3d at 1115 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The Court must uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Ahearn*, 988 F.3d at 1115-16; *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may only review the reasons asserted by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("[W]e cannot rely on independent findings of the district court. We are constrained to review the reasons the ALJ asserts."). Finally, the Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or [if], despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks omitted).

## DISPUTED ISSUES

Plaintiff presents two disputed issues:

(1) Whether the ALJ properly evaluated the opinion evidence of record; and

1

(2) Whether the ALJ properly assessed Plaintiff's subjective complaints.

2

3

(Joint Stip. at 2.)

4

5

**DISCUSSION**

6

7

**I.    The ALJ Properly Evaluated the Opinion Evidence of Record**

8

9

    **A.  Legal Standard for Evaluating Medical Source Opinions**

10

11    "[T]he ALJ is responsible for translating and incorporating clinical findings into a

12    succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

13    "The ALJ is [also] responsible for resolving conflicts in the medical record, including conflicts

14    among physicians' opinions." *David D. v. Saul*, 405 F. Supp. 3d 868, 877 (D. Or. 2019) (citing

15    *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008)).   In January

16    2017, the Social Security Administration published revisions to its final rules regarding the

17    evaluation of medical evidence.  *See* 82 Fed. Reg. 5844 (2017).  Before the 2017 revisions,

18    the "treating physician rule" provided that the opinion of a treating physician should be given

19    "controlling weight," if it "is well-supported by medically acceptable clinical and laboratory

20    diagnostic techniques and is not inconsistent with the other substantial evidence in the

21    [claimant's] case record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).  For cases

22    filed on or after March 27, 2017, the revised rules provide that "[w]e will not defer or give any

23    specific evidentiary weight, including controlling weight, to any medical opinions, or prior

24    administrative medical findings(s), including those from your medical sources." 20 C.F.R. §

25    404.1520c.

26

27        Here, because Plaintiff's claim was filed before March 27, 2017, the ALJ's assessment

28    of the medical source opinions is analyzed under the *pre-2017* standards.  In doing so, the ALJ

must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Accordingly, an ALJ errs if she discounts a treating or examining physician's medical opinion, or a portion thereof, "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). However, the law reserves the ultimate disability determination to the Commissioner, and, therefore, the ALJ generally is not required to articulate a rationale for rejecting a medical professional's conclusion about a claimant's ability to work. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

Under the rules applicable here, generally, the opinion of a treating source is entitled to greater weight than the opinion of doctors who do not treat the claimant because treating sources are "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See* 20 C.F.R. § 404.1527(c)(2) (governing claims filed before March 27, 2017). Accordingly, to reject an uncontradicted opinion of a treating or examining physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (internal quotation marks omitted). Alternatively, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* at 675 (internal quotation marks omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). Thus, an ALJ does not commit legal error per se solely by giving greater weight to the opinion of a nonexamining state agency physician than to the contradictory opinion of a treating physician. *See Morgan v. Comm'r of. Soc. Sec. Admin.*, 169 F.3d 595, 600-03 (9th Cir. 1999).

Further, an ALJ may properly reject a treating physician's conclusions that do not "mesh" with the treating physician's objective data or history. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). However, the ALJ may not arbitrarily substitute his own judgment for competent medical opinion, make his own independent medical findings, or assess an RFC that is not supported by the medical evidence. *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006); *see also Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir. 2008) ("Neither a reviewing judge nor the Commissioner is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion, or indeed for any competent medical opinion." (internal quotation marks and citation omitted)); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (As a lay person, an ALJ is "not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion[;]" he is "simply not qualified to interpret raw medical data in functional terms.").

### B. Plaintiff's Physical Impairments

#### i.   The Opinion Evidence

##### 1.  Dr. Payam Vahedifar, M.D.

Plaintiff's treating pain management physician, Dr. Vahedifar, submitted several opinions regarding Plaintiff's conditions.  On October 13, 2020, Dr. Vahedifar authored a Physical Medical Source Statement noting that he treated Plaintiff on a monthly basis and that Plaintiff had the following diagnoses: endometriosis, TBI, and chronic pain.  (AR 1535.)  He noted that Plaintiff's symptoms included pelvic pain, abdominal pain, and fatigue.  (AR 1535.)  The pain was described as: constant and severe enough to interfere with attention and concentration needed to perform even simple work tasks; lasting three to four weeks a month;

9

and worse during menstrual cycles.  (AR 1535-36.)  He opined that Plaintiff's impairments were expected to last at least twelve months and Plaintiff was not a malingerer.  (AR 1535.)

Dr. Vahedifar opined that Plaintiff was incapable of tolerating even "low stress" jobs, and could: sit fifteen minutes up to an hour at a time and, aggregately, about two hours in an eight hour day; and stand ten minutes to an hour at a time and, aggregately, stand and walk less than two hours in an eight hour day.  (AR 1536.)  He opined that she would need to walk around every fifteen minutes for five minutes at a time and would need a job that permitted shifting positions at will.  (AR 1536-37.)  He further opined that Plaintiff could: never lift and carry in a competitive work situation; rarely look down or up, turn her head right or left, and hold her head in a static position; rarely twist and climb ladders or stairs; and never stoop or crouch.  (AR 1537.)  He denied any significant limitations with reaching, handling, or fingering.  (AR 1537.)  Due to Plaintiff's impairments or treatment, Dr. Vahedifar opined that she would likely be absent from work more than four days per month and would likely be off task more than 25% of time in a typical eight hour work day.  (AR 1538.)  He noted that Plaintiff has had some pain relief one week per month, but she was "completely incapable of functioning, due to pain, even in a normal work environment" three weeks per month.  (AR 1538.)  Finally, he opined that Plaintiff's limitations would have begun in June 2015.  (AR 1538.)

The record also included progress notes from Dr. Vahedifar ranging from February 13, 2020 to October 14, 2020.  (AR 1638-47.)  His notes indicated that he first began treating Plaintiff on February 13, 2020.  (AR 1638.)  He prescribed Plaintiff Bultrans patches for her endometriosis and pelvic pain, increased the dosage, and indicated that her medication regimen was managing her chronic pain well.  (AR 1638-39, 1640, 1642, 1644, 1646-47.)

/ /

/ /

### 2. Dr. Zinovy Lekht, M.D.

On January 7, 2016, treating provider Dr. Lekht checked a box on the "Functional Impairment" section of a form, indicating that Plaintiff could not perform full-time sedentary work. (AR 689.)

### 3. Dr. Helen Rostamloo, M.D.

Consultative examiner Dr. Rostamloo, a board certified internist, performed an internal medicine consultation and authored a summary report dated January 7, 2016. (AR 477-83.) Dr. Rostamloo noted that Plaintiff had a history of ADHD, anxiety, and TBI in 2015. (AR 479.) Plaintiff was taking Adderall for her ADHD, Clonazepam for her anxiety, and Tylenol and Dilantin as needed. (AR 479, 482.) Dr. Rostamloo also noted that Plaintiff became sensitive to noise after her 2015 TBI, and that Plaintiff had laparoscopic surgery twenty years prior for endometriosis. (AR 479.) Plaintiff was able to generate seventy pounds of force with her right hand and forty pounds of force with her left hand. (AR 480.) Plaintiff ambulated with a normal gait and balance, and her neck range of motion was grossly within normal limits. (AR 480.) Dr. Rostamloo noted that Plaintiff's lungs were bilaterally clear to auscultation and percussion, and that Plaintiff did not have pain on motion. (AR 481.) She further noted that Plaintiff's upper and lower extremities were grossly within normal limits. (AR 481.) Additionally, Dr. Rostamloo indicated that she reviewed Plaintiff's medical records, covering: regular physical exams, a mammogram, breast ultrasound, and blood tests. (AR 482.) Her impressions included: ADHD and anxiety and history of TBI. (AR 482.) Ultimately, Dr. Rostamloo opined that Plaintiff would have no physical limitations. (AR 482.)

/ /
/ /
/ /

1

2

### ii.   Analysis

3

Plaintiff argues that the ALJ did not provide any explanation of the weight she assigned

4

to the treating or other medical source opinions and, therefore, she did not properly evaluate

5

the opinion evidence.  (Joint Stip. at 7.)  More specifically, Plaintiff argues that the ALJ: did

6

not precisely state what was inconsistent with Dr. Vahedifar's opinion or explain why the

7

treatment records did not support Dr. Vahedifar's opinion (*id.* at 8); failed to weigh the length

8

and frequency of Dr. Vahedifar's treatment (*id.*); and failed to consider the doctors' specialties

9

(*id.* at 10).[5]

10

11

As an initial matter, because the ALJ's assessment of the medical source opinions is

12

examined under the *pre-2017* standards (AR 179, 180), and the ALJ determined that Dr.

13

Vahedifar's opinion was contradicted (AR 932), the ALJ needed to provide specific and

14

legitimate reasons, supported by substantial evidence, to reject Dr. Vahedifar's opinion.  *See*

15

*Trevizo*, 871 F.3d at 675.  The Court finds that the ALJ provided specific and legitimate

16

reasons, and articulated a "substantive basis" for giving Dr. Vahedifar's opinion little weight.

17

*Garrison*, 759 F.3d at 1012.

18

19

The ALJ set out a thorough summary of Plaintiff's treatment history, diagnoses, and

20

alleged limitations, and determined that Dr. Vahedifar's opinion was inconsistent with other

21

opinions and unsupported by Dr. Vahedifar's actual treating records.  (AR 931-32; *see*

22

*Garrison*, 759 F.3d at 1012.)  On October 13, 2020, Dr. Vahedifar opined that Plaintiff was

23

incapable of tolerating even "low stress" jobs, and was limited to less than a full range of

24

sedentary work due to endometriosis, TBI, and chronic pain.  (*See* AR 1535-38.)  He opined

25

26

[5]      Plaintiff appears to complain that the ALJ relied upon the decision of a single decision maker, and asserts that the "ALJ is not permitted to give any weight to the fact that a claimant was found not disabled at the initial and/or reconsideration levels, precisely because the claimant has a statutory right to a de novo hearing." (Joint Stip. at 10-11.) However, Plaintiff failed to provide adequate supporting authority or argument other than bare assertions. (*See id.*) As such, the Court may not review this issue. *See Carmickle*, 533 F.3d at 1161 n.2 (noting that courts will not consider matters on appeal that are not specifically and distinctly argued in briefing).

27

28

that Plaintiff could: sit for about two hours in an eight hour day; stand and walk less than two hours in an eight hour day; and never lift and carry more than ten pounds.  (AR 1536.)  Dr. Vahedifar further opined that Plaintiff would likely be absent from work more than four days a month and would likely be off task more than 25% of a typical work day.  (AR 1538.)

The ALJ began her analysis by stating that she considered the opinion evidence in accordance with 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927, proceeded to discuss the opinion evidence, and then assessed Dr. Vahedifar's opinion.  (AR 930-32.)  The ALJ acknowledged that Dr. Vahedifar limited Plaintiff to less than a full range of sedentary work due to her diagnoses which included: endometriosis, TBI, and chronic abdominal/pelvic pain with fatigue.  (AR 932.)  Immediately after this, the ALJ cited to Dr. Rostamloo's January 7, 2016 evaluation in which she found that Plaintiff did not have any medically determinable physical limitations or restrictions.  (AR 932 (citing AR 477-83).)  Though the ALJ may not have been as explicit as Plaintiff would have liked, in stating that Dr. Vahedifar's opinion was inconsistent with the other medical opinions in the record, the omission of an explicit "inconsistency" statement is not necessarily fatal where the import of the opinion to the ALJ can be discerned by her decision.  *Cf. Dixon v. Saul*, 411 F. Supp. 3d 837, 848 n.3 (N.D. Cal. 2019) ("The ALJ did not specifically assign weight to [the doctor]'s medical opinion, though his heavy reliance on that opinion suggests great weight was assigned it.").  Here, the ALJ stated Dr. Vahedifar's opinion, stated Dr. Rostamloo's contrasting opinion, and immediately thereafter stated that she gave Plaintiff's largely subjective complaints the greatest benefit of doubt to assess an RFC limited to less than a full range of light exertion.  (AR 932.)  Thus, it is readily apparent that the ALJ gave Dr. Vahedifar's opinion lesser weight than the opinion of Dr. Rostamloo.

The ALJ's reliance on Dr. Rostamloo's opinion satisfies the substantial evidence standard.  *Biestek*, 139 S. Ct. at 1154.  Dr. Rostamloo, a board certified internist, performed an internal medicine consultation three months after Plaintiff filed her claim, detailed

Plaintiff's history of ADHD, anxiety, and TBI, and acknowledged Plaintiff's endometriosis and noise sensitivity complaints. (AR 477-83.) She reported that Plaintiff was able to generate seventy pounds of force with her right hand and forty pounds of force with her left hand, and ambulated with a normal gait and balance. (AR 480.) She further reported that Plaintiff's neck range of motion was grossly within normal limits, and that Plaintiff did not have pain on motion. (AR 480-81.) Dr. Rostamloo further noted that the range of motion in Plaintiff's upper and lower extremities was grossly within normal limits. (AR 481.) Finally, Dr. Rostamloo indicated that she reviewed Plaintiff's medical records, covering: regular physical exams, a mammogram, breast ultrasound, and blood tests. (AR 482.) Based on the above, Dr. Rostamloo opined that Plaintiff would have no physical limitations. (AR 482.) The Court finds that crediting Dr. Rostamloo's opinion was a legitimate basis for finding that Dr. Vahedifar's opinion was inconsistent with the overall record. *Garrison*, 759 F.3d at 1012.

The ALJ proceeded to discuss the supportability of Dr. Vahedifar's opinion by noting that his own treating records did not support his assessed level of dysfunction. (AR 932.) She cited to a June 30, 2020 progress note in which Dr. Vahedifar stated that Plaintiff was managing her pain well with medication. (AR 932 (citing AR 1642 ("The patient will need to continue the current medication regimen since this is managing the chronic pain well.")).) This was a specific and legitimate reason for finding that Dr. Vahedifar's opinion was unsupported. Indeed, Dr. Vahedifar simply adjusted Plaintiff's medication and repeatedly reported that Plaintiff was "managing" the chronic pain well. (*See* AR 1640, 1642, 1644, 1646.) Therefore, the ALJ properly rejected Dr. Vahedifar's opinion because it contradicted his own treating records. *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (finding that the contradiction of a doctor's opinion with his own findings was a sufficient basis for rejecting the doctor's opinion).

The Court finds no reversible error based on Plaintiff's argument that the ALJ failed to expressly consider the length and frequency of Dr. Vahedifar's treatment and the doctors'

specialties.  (Joint Stip. at 8, 10).  The Ninth Circuit has not compelled the exacting analysis that Plaintiff demands.  *Kovach v. Berryhill*, No. CV 18-1848-GPC (MSB), 2019 WL 2995824, at *12 (S.D. Cal. July 9, 2019) ("*Trevizo*[, 871 F.3d 664] does not demand a full-blown written analysis of all the regulatory factors; it merely requires some indication that the ALJ considered them." (internal quotation marks omitted)), *report and recommendation adopted*, 2019 WL 4745036 (S.D. Cal. Sept. 30, 2019).  As such, an "ALJ's failure to spell out his regulatory-factor rationale [i]s not fatal [if] the record sufficiently shows he considered the necessary elements."  *Hoffman v. Berryhill*, No. CV 16-1976-JM (AGS), 2017 WL 3641881, at *4 (S.D. Cal. Aug. 24, 2017), *report and recommendation adopted*, 2017 WL 4844545 (S.D. Cal. Sept. 14, 2017).  Here, it is apparent that the ALJ considered specialization as he noted that Dr. Vahedifar was treating Plaintiff for pain management.  (AR 932.)  The ALJ also considered the length and frequency of the treatment relationship as he specifically identified different reports that Dr. Vahedifar issued while treating Plaintiff between February 2020 and October 2020.  (AR 932.)  Moreover, the ALJ cited to the entirety of Dr. Vahedifar's treatment records which comprised of ten pages, and the ALJ specifically stated that his "*actual treating records* . . . do not support this level of dysfunction."  (AR 932 (emphasis added).)

Finally, Plaintiff argues that the ALJ erred in not providing an assessment of Dr. Lekht. (Joint Stip. at 15.)  On January 7, 2016, Dr. Lekht checked a box on the "Functional Impairment" section of a form to indicate that Plaintiff could not perform full-time sedentary work.  (AR 689.)  The ALJ was not required to weigh Dr. Lekht's one-page form which amounted to a finding that Plaintiff was disabled.  (*See* AR 689; *see also* 20 C.F.R. § 404.1527(d) ("Opinions that you are disabled" are "reserved to the Commissioner."); *Pruitt v. Comm'r of Soc. Sec.*, 612 F. App'x 891, 894 (9th Cir. 2015) (An opinion on a claimant's "disability status is a legal conclusion, not a medical one.").)

Nevertheless, even if the ALJ erred as Plaintiff fleetingly contends here, and elsewhere, any error was harmless.  *Brown-Hunter*, 806 F.3d at 492.  An error is harmless if, in light of

the other reasons supporting the ALJ's ultimate conclusion, it can be concluded that the error did not "affect[] the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). Additionally, Plaintiff's alternative reading of the evidence, as to the medical opinions and Plaintiff's subjective complaints, is insufficient to undermine the ALJ's findings. *Molina*, 674 F.3d at 1111. As discussed above, and further below, the inconsistency between the overall medical record and the opinions of record and Plaintiff's subjective complaints, was the primary basis for the ALJ's determination. Consequently, a more exhausting discussion of the 20 C.F.R. § 404.1527(c) factors would not have altered the ALJ's ultimate disability determination.

Accordingly, the ALJ's evaluation of the opinion evidence concerning Plaintiff's physical impairments is free of legal error and, on that basis, is affirmed.

## C. Plaintiff's Mental Impairments

### i.   The Opinion Evidence

#### 1.   Dr. Ziva Nagar, Ph.D., R.N., ABPP

On October 29, 2020, treating psychologist, Dr. Nagar, provided a mental medical source statement. (AR 1658-61.) She reported seeing Plaintiff on a weekly basis since March 2020, and noted that Plaintiff was taking medication for depression, anxiety, and ADHD. (AR 1658.) Dr. Nagar opined that Plaintiff would be unable to meet competitive standards, which was defined as the "patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting," in the following areas: remember work-like procedures; maintain attention for two-hour segment; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms; understand and remember

16

detailed instructions; carry out detailed instructions; set realistic goals or make plans independently of others; and travel in an unfamiliar place. (AR 1659-60.) She further opined that Plaintiff would be seriously limited, but not precluded, in her ability to: understand and remember very short and simple instructions; carry out very short and simple instructions; make simple work-related decisions; perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in a routine work setting; deal with normal work stress; deal with stress of semiskilled and skilled work; interreact appropriately with the general public; and maintain socially appropriate behavior. (AR 1659-60.)

Dr. Nagar noted that varying stress levels usually exacerbate Plaintiff's level of pain, depression, anxiety, and ability to function overall. (AR 1661.) She also opined that: Plaintiff's limitations would, on average, cause her to be off task at least 50% of an eight-hour workday; Plaintiff's impairments or treatment would cause her to be absent more than four days per month; and escape routes would be necessary to avoid migraines because she is highly sensitive to noise and light, and is easily overwhelmed by busy environments with multiple people. (AR 1661.) Finally, Dr. Nagar opined that Plaintiff's tinnitus interferes with her concentration and ability to focus, and that Plaintiff is unable to function at all while experiencing physical symptoms. (AR 1661.) Dr. Nagar noted that Plaintiff's mental limitations began after her June 2015 head trauma. (AR 1661.)

On November 2, 2020, Dr. Nagar completed a report noting that Plaintiff had been under her care since March 2020 for her depressive and anxiety symptoms. (AR 1663-71.) She stated that Plaintiff often suffered from migraine headaches, "cannot tolerate anything, [] is not able to speak well, and cannot articulate herself well." (AR 1663.) Dr. Nagar indicated that Plaintiff continued to experience severe symptoms despite treatment and medications. (AR 1664, 1666, 1670.) She opined that Plaintiff "should be placed on permanent disability." (AR 1671.)

### 2.  Dr. Jennifer Watson, Ph.D.

On May 9, 2019, Dr. Watson performed a neuropsychological evaluation, and indicated Plaintiff had a history of: concussions; depression; and attention concerns.  (AR 1146.)  She noted that: Plaintiff's ability to sustain attention, concentrate, and exert mental control was in the average range; Plaintiff was able to learn and recall new information; Plaintiff was able to detail information from autobiographical memory; verbalized judgment and reasoning were intact; and Plaintiff was socially pleasant and self-reflective.  (AR 1156-57.)  Dr. Watson opined that psychological/emotional factors were likely contributing to Plaintiff's cognitive difficulties.  (AR 1157.)  She further opined that fatigue and decreased attention and concentration impacted Plaintiff's functioning; and that there was evidence of significant depression, anxiety, mood shifts, and symptoms suggestive of PTSD.  (AR 1157.)

### 3.  Suzanne Schultz, MSW

On February 7, 2018, Suzanne Schultz, MSW, Plaintiff's treating social worker, authored a one-page letter stating that Plaintiff: was limited in her tolerance for activity; has photosensitivity; has difficulty concentrating; gets overwhelmed when overstimulated; and has poor organizational abilities.  (AR 914.)  She noted that Plaintiff had been participating in a Brain Injury Support Group since early 2016, and stated that, "she continues to be disabled by her brain injury."  (AR 914.)

### 4.  Dr. Marcia Daniels, M.D.

On November 23, 2015, Plaintiff's treating psychiatrist, Dr. Daniels, authored a social security disability narrative report.  (AR 917-22.)  She noted Plaintiff's treatment history, and stated that Plaintiff's health had not improved and that she was now "totally disabled."  (AR 919-20.)  She also noted that Plaintiff: was intermittently suicidal (without a plan); was

agitated; arrived late to her appointment; and was living out of her car. (AR 920-21.) Dr. Daniels opined that Plaintiff's current level of functioning included impaired social functioning and poor pace and concentration. (AR 921.) She further opined that Plaintiff showed significant signs of easily decompensating or deteriorating under stress, as well as marked restriction in activities of daily living. (AR 921-22.) However, she noted that Plaintiff did not meet the criteria for an involuntary psychiatric hold. (AR 922.)

### 5. Dr. Thaworn Rathana-Nakintara, M.D.

On January 6, 2016, consultative examiner Dr. Rathana-Nakintara performed a complete psychiatric evaluation and authored a summary report. (AR 470-76.) Plaintiff: arrived on time; was engaged and cooperative; and was considered an adequate historian. (AR 472, 474.) No medical records were available for Dr. Rathana-Nakintara to review. (AR 472.) He indicated that Plaintiff's past medical history included endometriosis, head trauma, and mold exposure. (AR 473.) Plaintiff reported being depressed and anxious due to pain, indicated she had endometriosis practically all her life, and noted that she had been seeing a psychiatrist for more than ten years but stopped in December 2015 because she no longer had medical insurance. (AR 472.) She also reported that: she was living with friends at the time; she had adequate self-care skills; she was able to do household chores, run errands, shop, and cook with difficulty; her hobbies or pastimes included dancing, reading, swimming and concerts/music; and she managed her own money. (AR 473-74.) Plaintiff: laughed and smiled appropriately and readily; denied suicidal ideations; did not want to bother trying to recall missed items; and completed serial seven and three subtractions without issue. (AR 474.) Dr. Rathana-Nakintara noted that Plaintiff exhibited no difficulty: interacting with others; maintaining even temperament or social functioning; and focusing and maintaining attention. (AR 476.) He further noted that Plaintiff was intellectually and psychologically capable of performing activities of daily living. (AR 476.) Dr. Rathana-Nakintara ultimately opined that Plaintiff would have no mental limitations. (AR 476.)

### 6.  Dr. Uwe Jacobs, Ph.D.

On March 1, 2016, Dr. Jacobs, a State Agency psychologist, opined that Plaintiff's condition resulted in mild limitations at best, and that Plaintiff did not have a severe impairment.  (AR 167-69.)  Accordingly, Dr. Jacobs concluded that Plaintiff was not disabled. (AR 168-69.)

### 7.  Dr. Daljit Mac, M.D.

Psychiatrist Dr. Mac also treated Plaintiff for mental health issues.  (AR 36-82, 1785-1831.)  Dr. Mac noted that Plaintiff: had sleep issues; showed signs of moderate depression; was easily distracted; and had poor attention.  (AR 1787, 1789, 1795, 1819.)  He further noted that Plaintiff reported experiencing crying spells, and that she experienced angry outbursts. (AR 1792, 1825.)  Finally, Dr. Mac reported that Prozac was helping Plaintiff. (AR 1816, 1819.)

### 8.  Dr. Donald Eknoyan, M.D.

On November 2, 2020, Plaintiff's treating psychiatrist, from Kaiser, Dr. Eknoyan authored a one-page letter concerning Plaintiff's mental health.  (AR 1662.)  He noted that he had been treating Plaintiff since February 2019 for major depressive disorder and anxiety, and that her symptoms fluctuated from moderate to severe.  (AR 1662.)  He further noted that Plaintiff reported ongoing physical symptoms and cognitive problems which worsened after a concussion from a car accident in 2015.  (AR 1662.)  Dr. Eknoyan opined that Plaintiff's symptoms appeared to impact her ability to work.  (AR 1662.)  However, he did not assess specific limitations.  (AR 1662.)

/ /

1

2

3    **ii.    Analysis**

4

5    With regard to mental limitations, Plaintiff also argues that the ALJ did not specify the

6    weight she assigned to any of the medical opinions, and failed to properly weigh the evidence

7    under 20 C.F.R. § 404.1527.  (Joint Stip. at 11.)  In particular, Plaintiff argues that the ALJ

8    erred in finding that Dr. Nagar's opinion was unsupported (*id.* at 11-12), and the ALJ failed to

9    discuss the consistency of Dr. Nagar's opinion with other record evidence (*id.* at 14).

As with Plaintiff's physical impairments, because the ALJ's assessment of the medical

source opinions is examined under the *pre-2017* standards (AR 179, 180), and the ALJ

determined that Dr. Nagar's opinion was inconsistent (AR 934), the ALJ needed to provide

specific and legitimate reasons, supported by substantial evidence, to reject Dr. Nagar's

opinion.  *See Trevizo*, 871 F.3d at 675.  The Court finds that the ALJ provided specific and

legitimate reasons, and articulated a "substantive basis" for giving Dr. Nagar's opinion less

weight.  *Garrison*, 759 F.3d at 1012.

In assessing Plaintiff's mental impairments, the ALJ first thoroughly summarized the

opinion evidence, and stated that the mental opinions varied and ranged from mild to moderate

limitations to marked limitations, and diagnoses also ranged from milder to moderate-severe.

(AR 933, 934.)  She stated that the opinions noting the inability to sustain work generally were

not considered persuasive or specifically helpful in determining Plaintiff's functional abilities.

(AR 934.)  More specifically, the ALJ determined that Dr. Nagar's opinion was unsupported

by sufficient treating records and inconsistent with other opinions.  (AR 934; *see Garrison*,

759 F.3d at 1012.)  On October 29, 2020, Dr. Nagar opined that Plaintiff's symptoms were

severe so as to seriously limit, but not preclude, her ability to mentally function in numerous

areas, and that, in other areas, she was unable to meet competitive standards and had no useful

ability to function.  (AR 1659-60.)  Subsequently on November 2, 2020, Dr. Nagar opined that

Plaintiff "should be placed on permanent disability."  (AR 1671.)

The ALJ adequately considered all of the opinions and reasonably gave less weight to the opinions of Dr. Nagar, and some to Dr. Eknoyan and Dr. Watson as reflected in the RFC. First, the ALJ found that the limitations Dr. Nagar assessed were not well supported because they were not accompanied by any objective findings, treating records or progress notes, other than the summaries and reports submitted by Dr. Nagar.  (AR 934.)  By contrast, the ALJ noted that Dr. Eknoyan's opinion garnered some weight because there were progress notes from Kaiser which showed mental health care.  (AR 934 (citing AR 3224-3529).)  The ALJ's assessment of Dr. Watson's opinion is reflected in limits to multitasking, pace, and detailed but not complex work tasks.  (AR 930, 933-34.)  An ALJ may appropriately discredit a treating psychologist's opinion when it is unsupported by the record as a whole or by objective medical findings.  *See Batson*, 359 F.3d at 1195; *see also* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.").

Second, the ALJ determined that Dr. Nagar's opinions were inconsistent with the overall medical record, and with Plaintiff's ability to maintain basic activities of daily living.  (AR 934.)  The ALJ pointed to Plaintiff's ability to engage appropriately with medical professionals and follow prescribed treatment, to find that she was not as limited as alleged and not unable to perform routine simple tasks or sufficiently engage with others.  (AR 934.)  The ALJ discussed Dr. Rathana-Nakintara's consultative psychiatric evaluation which took place one month after Dr. Daniels opined that Plaintiff was "totally disabled" and showed signs of marked restriction in activities of daily living.  (AR 919-22.)   She noted that Dr. Rathana-Nakintara's evaluation showed that Plaintiff: had adequate self-care skills; was able to do household chores, run errands, go shopping, and cook with difficulty; had hobbies of dancing, reading, swimming, and attending concerts; and could manage her own money.  (AR 933.)  This is a specific and legitimate reason, supported by substantial evidence, for giving Dr. Nadar's opinion little weight.  *Garrison*, 759 F.3d at 1012.

Although Plaintiff reported being depressed and anxious due to pain, Dr. Rathana-Nakintara noted that Plaintiff was an adequate historian; was living with friends; had adequate self-care skills; was able to do household chores, run errands, shop, and cook with difficulty; hobbies or pastimes included dancing, reading, swimming and concerts/music; and managed her own money. (AR 472-74.) Though Plaintiff did not want to bother trying to recall missed items, she: laughed and smiled appropriately and readily; denied suicidal ideations; and completed serial seven and three subtractions without issue. (AR 474.) In particular, Plaintiff exhibited no difficulty interacting with Dr. Rathana-Nakintara or his staff. (AR 476.) Finally, the ALJ's citation and discussion to records from 2012 show that she considered all the evidence in her decision, and illustrates that psychiatric medications provided some stability despite side effects. (AR 932, 933.) An ALJ may appropriately discount opinion evidence when a psychologist assesses limitations that appear to be inconsistent with a claimant's level of activity. *See Rollins*, 261 F.3d at 856; *see also* 20 C.F.R. § 404.1527 ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

For the same reasons, the Court finds that the ALJ appropriately gave Ms. Schultz's February 7, 2018 opinion less weight. (AR 934.) In a one-page letter, Ms. Schultz stated that Plaintiff: was limited in her tolerance for activity; has photosensitivity; has difficulty concentrating; gets overwhelmed when overstimulated; and has poor organizational abilities. (AR 914.) She further stated that, Plaintiff "continues to be disabled by her brain injury." (AR 914.) The ALJ gave her opinion less weight because her letter was not accompanied by any supporting treating records, progress notes, or any objective findings. (AR 933.) She also assessed less weight to her opinion due to inconsistency with the medical record because imaging studies did not highlight ongoing brain abnormalities. (AR 933; *see also* AR 429-30, 494.)

/ /

Accordingly, the ALJ's evaluation of the opinion evidence concerning Plaintiff's mental impairments is affirmed.

## II.   The ALJ Properly Assessed Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to articulate legitimate, and clear and convincing, reasons for discounting her subjective complaints.  (Joint Stip. at 30.)  She specifically argues that the ALJ's assessment of her subjective complaints is flawed because the ALJ failed to point to any prescribed treatment that Plaintiff did not pursue (*id.* at 28); erred in concluding that her daily activities were inconsistent with her subjective complaints (*id.* at 28-29); and erred in finding that the objective medical evidence did not support her allegations (*id.* at 29). The Court disagrees.

### A.  Legal Standard

Before an ALJ rejects a claimant's statements regarding the severity and persistence of her symptoms, the ALJ must engage in a two-step analysis.  *See Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (quoting *Trevizo*, 871 F.3d at 678).  In step one, the ALJ must determine whether the claimant has produced objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged."  *Trevizo*, 871 F.3d at 678 (internal quotation marks omitted).  "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide 'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record.  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)); *see also Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015); *Carmickle*, 533 F.3d at 1161.  When rejecting testimony, the ALJ must specifically identify which

"testimony is not credible and what evidence undermines the claimant's complaints." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

In March 2016, the Commissioner promulgated Social Security Ruling 16-3p ("SSR 16-3p"), 2017 WL 5180304, which "makes clear what [Ninth Circuit] precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms . . . and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo*, 871 F.3d at 678 n.5 (internal quotation marks omitted). Under SSR 16-3p, the ALJ shall determine whether to credit a claimant's statements about her pain and limitations by referring to the factors listed in 20 C.F.R. § 404.1529(c)(3), which include: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; the factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; the claimant's treatment, other than medication, for the symptoms; any other measure that the claimant uses to relieve the symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to the symptoms. *See* SSR 16-3p.

However, the lack of objective medical evidence supporting a claimant's allegations cannot be the sole basis for rejecting the claimant's statements about the severity of her symptoms and limitations. *Id.*; *see also Trevizo*, 871 F.3d at 679; 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").

/ /

/ /

/ /

### B.  Plaintiff's Subjective Complaints

Plaintiff testified at two hearings, one on February 8, 2018 and another on November 12, 2020.  (AR 131-60, 944-84, 1054-83.)

At the February 2018 hearing, which was before a different ALJ, Plaintiff testified that the main thing that kept her from working was a third concussion that she sustained in 2015.  (AR 137.)  She noted that her brain has not been working well since then, and that she could not function at all until 2017.  (AR 137.)  Plaintiff testified that she had improved slightly but she was still having daily migraines, and was extremely sensitive to noise and light, which made it difficult for her to be out in public.  (AR 137.)  She also testified that she was easily overwhelmed and became exhausted from simple tasks.  (AR 137, 139.)  Plaintiff reported that she battled with endometriosis before her 2015 concussion, and that it interfered with her ability to work.  (AR 141.)   She experiences physical pain and menstrual cramps from endometriosis. (AR 141.)  Plaintiff indicated that she was diagnosed with toxicity due to mold. (AR 143-44.)  She testified she had issues with short term and long term memory.  (AR 144-45.)  Moreover, she noted having left-knee surgery in 2017 due to a torn anterior cruciate ligament ("ACL").  (AR 145.)  She was still having issues with walking and balancing.  (AR 145, 147.)  Furthermore, she testified that she was definitely depressed.  (AR 142.)

Following voluntary remand, Plaintiff testified before the ALJ on November 12, 2020.  (AR 944-84.)   At that time, Plaintiff testified that she was still having chronic neck and shoulder pain from car accidents.  (AR 958.)   Her treatment included: block injections; acupuncture; and chiropractic therapy.  (AR 958.)  She most recently had a block injection in her cervical spine during summer 2019.  (AR 958.)   Her primary care physician was Dr. Gregory Rubin, M.D. who she had been unable to see recently due to COVD.  (AR 959.) Plaintiff stated she began seeing Dr. Nagar in March 2020, and she was having weekly psychotherapy through Zoom from Dr. Nagar.  (AR 960.)  She recently started Prozac for

1   depression, and was taking Clonazepam for anxiety and Adderall for ADHD.  (AR 960.)  She

2   started taking Prozac a few weeks prior because Fetzima was causing blurred vision.  (AR

3   960.)  Plaintiff noted she had been taking Clonazepam for a few months and Adderall on and

4   off for years.  (AR 961.)  She testified that the medications were helping her, and that she took

5   Bupranolol for pain and used Bultrans patches as well.  (AR 961.)  Plaintiff denied taking any

6   medications for her headaches because a lot of medications aggravate her tinnitus.  (AR 961.)

7

8       When questioned by her counsel, Plaintiff testified that she had been taking depression

9   and anxiety medication for years, but she has "tried and failed on almost every antidepressant

10  that's on the market."  (AR 962-63.)  She stated she was very sensitive to side effects.  (AR

11  963.)  She started taking antidepressants after her first serious car accident in or around 1990.

12  (AR 963.)  Plaintiff testified that she had migraine headaches once a week to every two weeks,

13  lasting about a day.  (AR 963-64.)

14

15      She reported having memory and focusing problems due to post-concussion syndrome.

16  (AR 964.)  The post-concussion syndrome also causes her to get easily overwhelmed when

17  around crowds.  (AR 964.)  She avoids people, crowds, and places with loud noises, which

18  also aggravate her tinnitus.  (AR 964-65.)  She takes daily naps lasting twenty to thirty minutes,

19  and has to take constant breaks.  (AR 965.)  Her breaks last anywhere from five to thirty

20  minutes.  (AR 967.)  As to her pelvic pain, Plaintiff testified that she has severe menstrual pain

21  and cramping, and only has one good week a month between ovulation and her period.  (AR

22  968-70.)  She reported scheduling things during that one week period.  (AR 969.)

23

24      Plaintiff also reported being able to sit for fifteen to twenty minutes without difficulties.

25  (AR 970.)  She stated she has difficulties lifting more than five pounds.  (AR 972.)  She

26  received transcranial magnetic stimulation ("TMS") for her anxiety and depression in 2019.

27  (AR 972.)  Plaintiff responded favorably to TMJ, and to neurofeedback which was not covered

28  by her insurance.  (AR 972-73.)  She "did not have a working brain" from 2015 to 2016.  (AR

27

973.)  Plaintiff also attended dialectical behavioral therapy through Kaiser which was helpful. (AR 973-74.)  She stated she used a transcutaneous electrical nerve stimulation ("TENS") unit for her cramps, and reported doing research to find other pain solutions.  (AR 974.)  Plaintiff noted that she still had pain despite taking "pretty strong medicine."  (AR 974.)

**C. Analysis**

In step one, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms.  (AR 931.)  However, in step two, the ALJ discounted Plaintiff's subjective complaints about the severity of her impairments and the limiting effects of those impairments.  (AR 931.)  The ALJ stated that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR 931.)  Because the ALJ made no determination as to whether Plaintiff was malingering, the ALJ had to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints, and those reasons must be supported by substantial evidence in the record.  *Treichler*, 775 F.3d at 1102.

The ALJ provided three reasons for discounting Plaintiff's subjective complaints: (1) Plaintiff's complaints were inconsistent with the objective medical evidence; (2) Plaintiff's conservative treatment; and (3) Plaintiff's activities of daily living.  (*See* AR 931-34.)

**1. Objective Medical Evidence**

First, the ALJ discounted Plaintiff's subjective statements because they were not consistent with the objective medical evidence in the record.  Although the ALJ may not reject Plaintiff's subjective complaints solely based on a lack of medical evidence, the ALJ may consider this as a factor when discrediting Plaintiff's complaints.  *Burch*, 400 F.3d at 680.

Here, the ALJ cited evidence from Plaintiff's medical record that provided specific, clear and convincing reasons to support a finding that Plaintiff's statements of pain and limitations were not as severe as claimed. *Parra*, 481 F.3d at 750-51 (noting the "inconsistencies" between the claimant's subjective symptom statements and the objective medical evidence in the record as a "significant and substantial reason" to reject the claimant's statements). The ALJ noted that Plaintiff had an extensive history of treatment for endometriosis, spinal pain, left wrist and hand pain, migraine headaches, photosensitivity, chronic post-traumatic headaches, neck pain with cervical muscle spasms, segmental and somatic dysfunction of the cervical and thoracic regions, uterine bleeding with abdominal cramping, cervicalgia, occipital neuralgia, trapezius muscle strains, tenderness and a limited range of motion in the affected areas, post-concussion syndrome, knee pain, hip pain, low back pain, hypertension, chronic fatigue, shortness of breath, and multiple chemical sensitivity. (AR 932.) In the face of this exhaustive list of complaints, the ALJ pointed to reports showing: the absence of specific physical complaints (AR 932 (citing AR 1735)); and normal and mild CT findings (AR 932 (discussing AR 429-30 and citing AR 497, 501-02)). The ALJ further pointed to Dr. Rostamloo's report in which she found that Plaintiff did not have any medically determinable physical limitations or restrictions. (AR 932 (citing AR 477-83).) Additionally, the ALJ pointed to medical evidence showing the inconsistency in the severity of Plaintiff's mental impairments. (AR 933-34.) Despite Plaintiff's complaints of low energy, social anxiety, memory loss, and ability to focus and adapt, medical evidence showed that Plaintiff had: maintained basic activities of daily living; engaged appropriately with medical professionals; continued to seek and followed prescribed treatment; and avoided triggers. (AR 934.)

## 2. Conservative Treatment

Second, the ALJ properly discounted Plaintiff's subjective complaints because her overall conservative treatment was inconsistent with her alleged symptoms. *See Astrue*, 481 F.3d at 750-51 (ALJ can rely on conservative treatment to discount claimant's statements);

*and see Johnson*, 60 F.3d at 1434 (noting that evidence of "conservative treatment" is a sufficient ground to discount a claimant's testimony regarding the severity of an impairment). The ALJ noted that, as to Plaintiff's physical condition, the progress notes and reports from various medical sources demonstrated that Plaintiff largely received conservative outpatient care for her symptoms and conditions. (AR 932 (citing AR 322-42; 343-469; 484-502; 503-16; 520-731; 732-62; 763-896; 915-16; 1162-1534; 1539-1630; 1631-37; 1638-47; 1648-57; 1734-81).)

As discussed above, Dr. Vahedifar stated that Plaintiff was managing her pain well with medication (AR 932 (citing AR 1642 ("The patient will need to continue the current medication regimen since this is managing the chronic pain well."))), and repeatedly reported that Plaintiff was "managing" her chronic pain well (*see* AR 1640, 1642, 1644, 1646). Moreover, Plaintiff reported doing well with psychiatric medications, and was attending psychotherapy. (AR 931, 933.) The Court finds no legal error in the ALJ's consideration of Plaintiff's overall conservative treatment. *See, e.g.*, 20 C.F.R. § 404.1529(c)(3)(iv) (ALJ may consider type, dosage, and effectiveness of medications); *Randall v. Saul*, 845 F. App'x 521, 523 (9th Cir. 2021) (conservative treatment measures include medication); *Tommasetti*, 533 F.3d at 1039-40 ("The record reflects that Tommasetti responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset."); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits.").

### 3.  Activities of Daily Living

Third, the ALJ determined that Plaintiff's reported daily activities were inconsistent with her subjective complaints of pain, social anxiety, memory loss, and ability to focus and

adapt.  Despite complaints of hip pain, Plaintiff was still able to drive.  (AR 932 (citing AR 1163).)  Additionally, Dr. Rathana-Nakintara's January 6, 2016 summary report indicates that Plaintiff had adequate self-care skills, was able to do household chores, run errands, go shopping, and cook with difficulty; had hobbies of dancing, reading, swimming, and attending concerts; and could manage her own money.  (AR 473-74.)  The ALJ found that Plaintiff's ability to maintain basic activities of daily living, engage appropriately with medical professionals, and follow prescribed treatment suggested that she was not seriously limited, or unable to perform routine simple tasks, follow 1-2 step instructions, engage sufficiently with others to learn and complete tasks, and maintain a reduced, but sustained, pace to complete activities.  (AR 934.)  The ALJ further found that Plaintiff's ability to continue to seek and follow medical advice, take medications, remember and avoid triggers suggested no significant limitations in adapting and managing herself.  (AR 934.)  Based on the specific activities that the ALJ cited, the ALJ "was permitted to consider daily living activities in h[er] credibility analysis."  *Burch*, 400 F.3d at 681; *see also Molina*, 674 F.3d at 1112-13 ("While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." (internal quotation marks and citations omitted)); 20 C.F.R. § 404.1529(c)(3)(i).

Thus, the Court finds that the ALJ provided specific, clear and convincing reasons, supported by substantial record evidence, to discount Plaintiff's subjective complaints.  Accordingly, the Court finds no legal error in the ALJ's assessment of Plaintiff's subjective complaints.

/ /

/ /

/ /

/ /

**CONCLUSION**

For the reasons stated above, the Court finds that the ALJ articulated legally sufficient reasons for denying disability benefits; reasons that are supported by substantial evidence in the record. *See Lingenfelter*, 504 F.3d at 1035. Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: August 31, 2022

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE